IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **ELITE SUPPLIER GROUP, INC.** <br> **d/b/a ELITE GLOBAL BRANDS** | **PLAINTIFF/** <br> **COUNTERCLAIM-DEFENDANT** |
| V. | CASE NO. 5:25-cv-05045 |
| **RENEE DUBOIS and RED FORK BRANDS, LLC** | **DEFENDANTS/** <br> **COUNTERCLAIM-PLAINTIFFS** |
| AND | |
| **RENEE DUBOIS; RED FORK BRANDS, LLC;** <br> **and RENEE DUBOIS BRANDS, LLC** | **THIRD-PARTY PLAINTIFFS** |
| V. | |
| **ELITE SUPPLIER GROUP, INC.** <br> **d/b/a ELITE GLOBAL BRANDS,** <br> **ELITE SALES and MARKETING, LLC;** <br> **JARRIED TY SAMS; GLORY COMMODITIES, INC.;** <br> **FLYING ALBATROSS VENTURES, LLC;** <br> **and ERIC FINE** | **THIRD-PARTY DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER

Now before the Court is Counterclaim-Defendant and Third-Party Defendants' Motion to Dismiss (Doc. 26) Counts V–X of the Amended Counterclaim and to Strike or Sever Counts XI–XIV of the Third-Party Complaint. Counterclaim-Plaintiffs and Third-Party Plaintiffs filed a Response in Opposition (Doc. 33), and Counterclaim-Defendant and Third-Party Defendants filed a Reply (Doc. 37). On August 12, 2025, the Court held a hearing on the Motion, and counsel for all parties had the opportunity to present oral argument. At the conclusion of the hearing, the Court ruled from the bench, **GRANTING IN PART AND DENYING IN PART** the Motion. This written Order explains in further detail

1

the Court's reasoning, but to the extent it differs from what was stated during the hearing, the written Order will control.

## I.  BACKGROUND

This case originated in state court and was removed to this Court on February 27, 2025. According to the Complaint (Doc. 3), three individuals named Ryan Kwan, Eric Fine, and Renee DuBois formed a partnership called Red Fork Brands, LLC, to sell insulated tumblers. *Id.* at ¶ 7. Red Fork's first and only customer from 2019 to 2024 was HEB, a Texas grocery store chain. *Id.* at ¶ 11. Even though Kwan, Fine, and DuBois shared in the startup costs, taxes, liability insurance, and operational expenses for the company and jointly collaborated on all corporate decisions, *id.* at ¶ 8, DuBois was "the only listed owner of Red Fork," *id.* at ¶ 7. The Complaint explains that Kwan, Fine, and DuBois agreed to evenly split all profits that Red Fork earned on its contract with HEB. *Id.* at ¶ 8.

Beginning in 2020, Kwan, Fine, and DuBois collaborated with a fourth individual named Ty Sams, who was the founding member of Plaintiff Elite Supplier Group, Inc., doing business as Elite Global Brands ("Elite"). *Id.* at ¶ 12. Sams, Fine, and DuBois signed an Agreement in Principle (Doc. 31) to merge Elite with: (1) Red Fork, (2) a company called GolfGen, LLC, which Kwan, Fine, and DuBois co-owned, (3) and a company called Renee DuBois Design, LLC ("RDD"), which DuBois solely owned. *Id.* at ¶ 13. Kwan did not sign the Agreement, but the Complaint states that "he was aligned with the merger." *Id.* The parties' intention going forward was to build their retail tumbler business under Elite's corporate umbrella.

At some point, DuBois insisted that Elite retain an outside broker called Creative Sales and Marketing, Inc. ("CSM") to help expand the business. Kwan and Fine objected

to hiring CSM, but the company was hired anyway. *Id.* at ¶ 16. On August 16, 2023, Fine, DuBois, and a CSM partner named Trent Atchley traveled to San Antonio, Texas, to meet with an HEB buyer to discuss expanding Elite's product line. *Id.* at ¶ 18. Elite also took meetings with other retailers, including Belk, Walmart, HomeGoods, and Nordstrom/Nordstrom Rack. *Id.* at ¶ 19. The Complaint asserts that at around this time, DuBois's company RDD fired its designers and caused Elite to hire them at "falsely inflated salaries." *Id.* at ¶ 21.

Beginning on June 1, 2023, Kwan, Fine, DuBois, and Sams were paid salaries derived from the revenue earned by Elite, and Elite filed a consolidated tax return for 2023 that included revenue and expenses from all the corporate entities under Elite's umbrella. *Id.* at ¶ 26. Elite therefore maintains that even if Red Fork, GolfGen, LLC, and RDD were not *formally* merged into Elite at that point, the partners certainly treated their business arrangement as a de facto merger, with Elite as the resulting business. *Id.* at ¶ 28.

The Complaint explains that the partnership showed signs of fracture sometime in late 2023. DuBois stormed out of a partner meeting in January 2024 and, after that, began including her personal attorney on all business communications concerning Elite. *Id.* at ¶ 32. DuBois then secretly scheduled her own meetings with HEB buyers in May 2024 for the purpose of stealing the business from her Elite partners, *id.* at ¶ 34, and on May 30, she informed the partners—through her attorney—that she would no longer be sharing in the profits from HEB's recent order of tumblers. *Id.* at ¶ 36. She unilaterally shifted the HEB tumbler business from Elite to Red Fork without the approval of Kwan or Fine; and as a result, Red Fork became a direct competitor of Elite. The remaining partners of Elite now allege that DuBois was only able to stage this coup because she appropriated Elite's

confidential and proprietary information, trade secrets, business plans, and contacts in the industry. *Id.* at ¶ 40.

Elite sues DuBois and Red Fork for declaratory judgment (Count I), asking that the Court declare that DuBois is and was a partner of Elite, so all business income and opportunities that she, through Red Fork, received from HEB since 2023 belong to Elite. In the alternative, Elite asks for a declaration that Red Fork de facto merged into Elite, so the recent business Red Fork received from HEB actually belongs to Elite. In addition, Elite sues DuBois and Red Fork for unjust enrichment (Count II), breach of fiduciary duty (Count III), and tortious interference with Elite's business expectancy with HEB (Count IV) and requests an accounting (Count V).

On April 10, 2025, DuBois and Red Fork filed an Amended Counterclaim against Elite, and DuBois, Red Fork, and DuBois's company RDD filed an Amended Third-Party Complaint against: (1) Elite, (2) Sams, (3) Sams's company Elite Sales and Marketing, LLC, (4) Fine, (5) Fine's company Flying Albatross Ventures, LLC, and (6) Kwan's company Glory Commodities, Inc. *See* Doc. 16. DuBois, Red Fork, and RDD maintain that DuBois is and was the sole member of Red Fork and that Kwan and Fine refused to become partners of Red Fork due to conflicts of interests they had with other business ventures. *See id.* at ¶ 23. DuBois also contends that she and Sams jointly formed GolfGen, LLC in 2020. *Id.* at ¶ 24. Kwan's factory manufactured the tumblers for GolfGen, Red Fork, and Elite using DuBois's designs. *Id.* And DuBois clarifies that Kwan's and Fine's relationship to Red Fork was that of paid consultants (receiving a percentage of net profits). *Id.*

According to DuBois and Red Fork, the parties' Agreement in Principle required DuBois and Sams to "generate income for the business" and to "put all profits from their businesses into [Elite]"; Kwan's factory was required to make the tumbler product; Fine was required to work to build the business; and Elite was required to pay all bills and expenses associated with the business. (Doc. 16, ¶ 28). DuBois agrees that the parties had a meeting in early 2024, after which DuBois harbored reservations about moving forward with the merger. *Id.* at ¶ 30. DuBois explains that after that meeting, Sams stopped paying Red Fork's invoices and failed to pay DuBois her portion of profits for retail orders. Then, Fine told DuBois that she and Red Fork were no longer working with Elite. *Id.* at ¶ 31. Finally, in June 2024, Sams deleted DuBois's Elite email address, work calendar, business credit card, and access to Elite's bank account without prior notice. *Id.*

The Amended Counterclaim and Third-Party Complaint assert fourteen Counts against Elite and the Third-Party Defendants. First, DuBois and Red Fork seek a declaratory judgment (Counts I & II) that DuBois is and has been the only member of Red Fork and that the Agreement in Principle contains the parties' entire agreement. Count III requests an accounting and reimbursement from Elite. Count IV asserts that the Counterclaim-Defendants and Third-Party Defendants breached the Agreement in Principle, and Counts V and VI assert alternative equitable claims for unjust enrichment and promissory estoppel. Count VII is a claim for copyright infringement concerning Elite's illegal use of DuBois/Red Forks' original tumbler designs. Count VIII alleges that Sams and Elite engaged in fraudulent transfers and asks that the corporate veil be pierced to hold Sams individually liable for Elite's wrongdoing. Count IX is a general claim against all Counterclaim and Third-Party Defendants for breach of fiduciary duty, and Count X

alleges fraud and constructive fraud. As for Counts XI–XV, these are claims for breach of contract, fraud and constructive fraud, tortious interference, and negligence against Kwan's company, Glory Commodities, Inc., related to a cancelled holiday order for tumblers by HEB.

The Motion to Dismiss now before the Court (Doc. 26) argues that DuBois and Red Fork have failed to state plausible counterclaims or third-party claims as to Counts V–IX and that Counts X–XIV should be stricken or severed, as they involve an alleged dispute that is unrelated to the claims in the Complaint or Amended Counterclaim.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

To survive dismissal under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

### B.  Motion to Strike

Rule 14 addresses third-party practice. According to Rule 14(a)(1), a third-party complaint may be asserted against a non-party "who is or may be liable to it for all or part

of the claim against it." Rule 14(a)(4) also provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately." The decision to strike or sever a third-party claim under Rule 14 lies within the sound discretion of the court. *See* Fed. R. Civ. P. 14 advisory committee's note to 1963 amendment (noting that "the court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim, or to sever the third-party claim or accord it separate trial if confusion or prejudice would otherwise result"). "Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action only if that third person's liability on that claim is in some way dependent upon the outcome of the main claim." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (citation modified).

### III.  DISCUSSION

#### A.  Motion to Dismiss Counts V–X

Counterclaim-Defendants and Third-Party Defendants assert that Counts V and VI—for unjust enrichment and promissory estoppel—should be dismissed because DuBois and Red Fork rely on an express Agreement in Principle to advance their breach of contract claim, and that necessarily means that alternative equitable remedies are precluded. Although it is true that quasi-contract claims are subject to dismissal when a valid written contract is found to govern the entire dispute, *see Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612 (2005), it appears the parties disagree about the scope and enforceability of the Agreement in Principle. Indeed, the Complaint itself asserts an unjust enrichment claim and admits doubt that the Agreement in Principle governs the entire dispute. See Doc. 3, ¶¶ 13, 45, 46–57. As Rule 8(d) permits the

7

pleading of alternative equitable claims, the Court declines to dismiss Counts V and VI at this early stage in the litigation.

Next, Count VII alleges that the Counterclaim- and Third-Party Defendants committed copyright infringement. The elements of this claim include: "(1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work." *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011). In the view of Counterclaim- and Third-Party Defendants, DuBois and Red Fork failed to sufficiently plead copyright infringement because they never identified which copyrighted works were at issue in the claim. The Court agrees that that Count VII is not specific enough to meet the minimum requirements of *Iqbal* and *Twombly* and is therefore **DISMISSED WITHOUT PREJUDICE**.

Count VIII is a claim for fraudulent transfer and piercing the corporate veil. First, "[t]he doctrine of piercing the corporate veil is an equitable remedy; it is not itself a cause of action; rather, it is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract." *Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*, 384 S.W.3d 540, 553 (Ark. App. 2011). Here, the tort alleged is fraudulent transfer by Sams, by and through Elite. Specifically, DuBois and Red Fork accuse Sams of using Elite to:

> tak[e] unauthorized control over and/or mak[e] an unauthorized transfer of an interest in DuBois' assets, including designs, with the purpose of depriving DuBois of the benefits thereof, and/or obtain[ ] DuBois' assets by deception with the purpose of depriving DuBois thereof. Sams then caused ESG to transfer said assets to ESM to avoid ESG's obligations to DuBois.

(Doc. 16, ¶ 62). Pursuant to Arkansas Code § 4-59-204, a fraudulent transfer occurs when there is actual intent to hinder, delay, or defraud a creditor, or if the debtor made a

transfer without receiving reasonably equivalent value. Though the Amended Counterclaim generally alleges that Sams transferred Elite's assets with the intent to hinder, delay, or defraud DuBois and Red Fork, these allegations are not specific enough to meet Rule 9(b)'s strict pleading standard, which requires particularity: "the who, what, where, when, and how of the alleged fraud." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016) (citation modified). This claim is **DISMISSED WITHOUT PREJUDICE**.

Count IX maintains that Sams, Flying Albatross Ventures, LLC, Fine, and Glory Commodities, Inc. breached their fiduciary duties to DuBois and Red Fork when they "engaged in misconduct constituting a breach of fiduciary duties" and "acted with malice, or with such reckless disregard that malice may be inferred." (Doc. 16, ¶¶ 70 & 72). "A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship." *Cherepki v. Walker*, 913 S.W.2d 761, 767 (Ark. 1996) (citing Restatement (Second) of Torts § 874 (1979)) (other citations omitted). However, "[c]ontracting parties do not necessarily owe fiduciary duties to each other." *W. Memphis Adolescent Residential, LLC v. Compton*, 374 S.W.3d 922, 927 (Ark. Ct. App. 2010) (citing *Evans Indus. Coatings, Inc. v. Chancery Ct. of Union Cnty.*, 870 S.W.2d 701 (Ark. 1994)). Here, the allegations are too vague to state a claim. Count IX broadly accuses individuals and corporations of breaching fiduciary duties to DuBois, an individual, and her company, Red Fork. It is also unclear the nature of the relationship of trust or confidence that developed among the parties by virtue of them entering into the Agreement in Principle; for example, the Court is not certain whether DuBois is attempting in Count IX to bring a direct action as an Elite

shareholder or a derivative action on behalf of Elite. The claim is therefore **DISMISSED WITHOUT PREJUDICE**.

Finally, Count X asserts fraud or constructive fraud. Once again, Rule 9(b) requires that fraud be pleaded with particularity. DuBois and Red Fork's first theory is that Fine committed fraud by misrepresenting or failing to disclose that Elite was overpaying Kwan. The second theory is that Glory Commodities misrepresented that Red Fork's orders would ship in a timely manner, even though Glory knew the work was incomplete and the product would not ship. (Doc. 16, ¶ 74). The third theory alleges that Sams falsely promised to contribute revenue, compensate DuBois and Red Fork, and pay their expenses. *Id.* Though Counterclaim- and Third-Party Defendants insist that these allegations do not amount to fraud and are instead "grievances over management, compensation, or failed expectations," (Doc. 37, p. 10), the Court disagrees and finds that Count X not only states a plausible claim for fraud or constructive fraud but also satisfies Rule 9(b)'s pleading requirements.

### B. Motion to Strike or Sever Counts XI–XIV

Counterclaim- and Third-Party Defendants' final argument is that the claims in Counts XI–XIV are based on an alleged breach of a separate product-supply agreement between Glory Commodities and Red Fork and should be stricken because their resolution does not depend on the outcome of the claims in the Complaint or the Amended Counterclaim. The Court observes that according to Paragraph 89 of the Third-Party Complaint, Glory Commodities—a party to the Agreement in Principle—attempted "to torpedo [Red Fork's] business with HEB" by failing to deliver holiday shipments after the joint venture terminated. (Doc. 16, ¶ 89). Further, Paragraph 33 notes that "*during/after*

10

*the fall out [between the parties to the Agreement in Principle],*" Glory Commodities misrepresented that HEB's order had been shipped, when in reality, the product was incomplete, and as a result, HEB cancelled its contract with Red Fork to the tune of $386,000 in damages. *Id.* at ¶ 33. The Court finds that these contract claims are sufficiently related to the allegations in the Complaint and Amended Counterclaim to remain in the case and not be severed. Severing these claims for a separate lawsuit involving the same parties, same product, and same customer will only result in duplicative discovery which will need to be managed—and will only waste the Court and parties' time. In the Court's discretion—and at this early stage in the litigation—Counts XI–XIV will not be dismissed or severed.

## IV.  CONCLUSION

**IT IS ORDERED** that for the reasons stated Counterclaim-Defendant and Third-Party Defendants' Motion to Dismiss (Doc. 26) is **GRANTED IN PART AND DENIED IN PART**. Counts VII (copyright infringement), VIII (fraudulent transfer/piercing the corporate veil), and IX (breach of fiduciary duty) of the Amended Counterclaim and Third-Party Complaint (Doc. 16) are **DISMISSED WITHOUT PREJUDICE**; otherwise, the Motion is denied.

**IT IS SO ORDERED** on this 20th day of August, 2025.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE