IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ELITE SUPPLIER GROUP, INC.
d/b/a ELITE GLOBAL BRANDS                                              PLAINTIFF/
                                                      COUNTERCLAIM-DEFENDANT


V.                                    CASE NO. 5:25-cv-05045


RENEE DUBOIS and
RED FORK BRANDS, LLC                                                  DEFENDANTS/
                                                      COUNTERCLAIM-PLAINTIFFS


AND

RENEE DUBOIS;
RED FORK BRANDS, LLC; and
RENEE DUBOIS BRANDS, LLC                               THIRD-PARTY PLAINTIFFS


V.

ELITE SUPPLIER GROUP, INC. d/b/a
ELITE GLOBAL BRANDS, ELITE SALES and
MARKETING, LLC; JARRIED TY SAMS;
GLORY COMMODITIES, INC.;
FLYING ALBATROSS VENTURES, LLC; and
ERIC FINE                                            THIRD-PARTY DEFENDANTS


**ORDER ON AMENDED MOTION TO COMPEL
AND MOTION FOR PROTECTIVE ORDER**


Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable David Clay

Fowlkes, United States District Judge, referred Renee DuBois', Red Ford Brands, Inc.'s, and

Renee DuBois Design's Motion and Amended Motion to Compel and Motion for Protective Order

to the undersigned.  (ECF Nos.  61, 66, 78).  Elite Supplier Group, Inc, Jarried Ty Sams, Flying

Albatross Ventures, LLC, and Eric Fine have filed responses in opposition to both motions.  (ECF

Nos. 63, 71).

# I.    BACKGROUND

This case originated in state court and was removed to this Court on February 27, 2025. According to the Complaint (ECF No. 3), three individuals named Ryan Kwan ("Kwan"), Eric Fine ("Fine"), and Renee DuBois ("DuBois") formed a partnership called Red Fork Brands, LLC ("RFB"), to sell insulated tumblers. *Id*. at ¶ 7. RFB's first and only customer from 2019 to 2024 was HEB, a Texas grocery store chain. *Id*. at ¶ 11. Even though Kwan, Fine, and DuBois shared in the startup costs, taxes, liability insurance, and operational expenses for the company and jointly collaborated on all corporate decisions, *id*. at ¶ 8, DuBois was "the only listed owner" of RFB, *id*. at ¶ 7. The Complaint explains that Kwan, Fine, and DuBois agreed to evenly split all profits that RFB earned on its contract with HEB. *Id*. at ¶ 8.

Beginning in 2020, Kwan, Fine, and DuBois collaborated with a fourth individual named Ty Sams ("Sams"), who was the founding member of Plaintiff Elite Supplier Group, Inc., doing business as Elite Global Brands ("Elite"). *Id*. at ¶ 12. Sams, Fine, and DuBois signed an Agreement in Principle (ECF No. 31) to merge Elite with: (1) RFB, (2) a company called GolfGen, LLC ("GG"), which Kwan, Fine, and DuBois co-owned, (3) and a company called Renee DuBois Design, LLC ("RDD"), which DuBois solely owned. *Id*. at ¶ 13. Kwan did not sign the Agreement, but the Complaint states that "he was aligned with the merger." *Id*. The parties' intention going forward was to build their retail tumbler business under Elite's corporate umbrella.

At some point, DuBois insisted that Elite retain an outside broker called Creative Sales and Marketing, Inc. ("CSM") to help expand the business. Kwan and Fine objected to hiring CSM, but the company was hired anyway. *Id*. at ¶ 16. On August 16, 2023, Fine, DuBois, and a CSM partner named Trent Atchley traveled to San Antonio, Texas, to meet with an HEB buyer to discuss expanding Elite's product line. *Id*. at ¶ 18. Elite also took meetings with other retailers, including

2

Belk, Walmart, HomeGoods, and Nordstrom/Nordstrom Rack. *Id*. at ¶ 19. The Complaint asserts that at around this time, DuBois's company RDD fired its designers and caused Elite to hire them at "falsely inflated salaries." *Id*. at ¶ 21.

Beginning on June 1, 2023, Kwan, Fine, DuBois, and Sams were paid salaries derived from the revenue earned by Elite and Elite filed a consolidated tax return for 2023 that included revenue and expenses from all the corporate entities under Elite's umbrella. *Id*. at ¶ 26. Elite therefore maintains that even if RFB, GG, and RDD were not formally merged into Elite at that point, the partners certainly treated their business arrangement as a de facto merger, with Elite as the resulting business. *Id*. at ¶ 28.

The Complaint explains that the partnership showed signs of fracture sometime in late 2023. DuBois stormed out of a partner meeting in January 2024 and, after that, began including her personal attorney on all business communications concerning Elite. *Id*. at ¶ 32. DuBois then secretly scheduled her own meetings with HEB buyers in May 2024 for the purpose of stealing the business from her Elite partners, *id*. at ¶ 34, and on May 30, she informed the partners—through her attorney—that she would no longer be sharing in the profits from HEB's recent order of tumblers. *Id*. at ¶ 36. She unilaterally shifted the HEB tumbler business from Elite to RFB without the approval of Kwan or Fine; and as a result, RFB became a direct competitor of Elite. The remaining partners of Elite now allege that DuBois was only able to stage this coup because she appropriated Elite's confidential and proprietary information, trade secrets, business plans, and contacts in the industry. *Id*. at ¶ 40.

Elite sues DuBois and RFB for declaratory judgment (Count I), asking that the Court declare that DuBois is and was a partner of Elite, so all business income and opportunities that she, through RFB, received from HEB since 2023 belong to Elite. In the alternative, Elite asks for a

3

declaration that RFB de facto merged into Elite, so the recent business RFB received from HEB belongs to Elite.  In addition, Elite sues DuBois and RFB for unjust enrichment (Count II), breach of fiduciary duty (Count III), and tortious interference with Elite's business expectancy with HEB (Count IV) and requests an accounting (Count V).

On November 5, 2025, DuBois and RFB filed an Second Amended Counterclaim against Elite, and DuBois, RFB, and DuBois's company RDD filed a Second Amended Third-Party Complaint against: (1) Elite, (2) Sams, (3) Sams's company Elite Sales and Marketing, LLC, (4) Fine, (5) Fine's company Flying Albatross Ventures, LLC ("FAV"), and (6) Kwan's company Glory Commodities, Inc.  (ECF No. 54).  DuBois, RFB, and RDD maintain that DuBois is and was the sole member of RFB and that Kwan and Fine refused to become partners of RFB due to conflicts of interests they had with other business ventures.  *See id*. at ¶ 23.  DuBois also contends that she and Sams jointly formed GolfGen, LLC in 2020.  *Id*. at ¶ 24.  Kwan's factory manufactured the tumblers for GolfGen, RFB, and Elite using RDD's designs.  *Id*.  And DuBois clarifies that Kwan's and Fine's relationship to RFB was that of paid consultants (receiving a percentage of net profits).  *Id*.

According to DuBois and RFB, the parties' Agreement in Principle required DuBois and Sams to "generate income for the business" and to "put all profits from their businesses into [Elite]"; Kwan's factory was required to make the tumbler product; Fine was required to work to build the business; and Elite was required to pay all bills and expenses associated with the business. (ECF No. 16, ¶ 28).  DuBois agrees that the parties had a meeting in early 2024, after which DuBois harbored reservations about moving forward with the merger.  *Id*. at ¶ 30.  DuBois explains that after that meeting, Sams stopped paying RFB's invoices and failed to pay DuBois her portion of profits for retail orders.  Then, Fine told DuBois that she and RFB were no longer working with

4

Elite. *Id*. at ¶ 31. Finally, in June 2024, Sams deleted DuBois's Elite email address, work calendar, business credit card, and access to Elite's bank account without prior notice. *Id*.

The Second Amended Counterclaim and Third-Party Complaint assert fourteen counts against Elite and the Third-Party Defendants. (ECF No. 16). First, DuBois, RFB, and RDD seek a declaratory judgment (Counts I & II) that DuBois is and has been the only member of RFB and that the Agreement in Principle contains the parties' entire agreement. Count III requests an accounting and reimbursement from Elite. Count IV asserts that the Counterclaim-Defendants and Third-Party Defendants breached the Agreement in Principle, and Counts V and VI assert alternative equitable claims for unjust enrichment and promissory estoppel. Count VII is a claim for copyright infringement concerning Elite's illegal use of DuBois/RFB's original tumbler designs. Count VIII alleges that Sams and Elite engaged in fraudulent transfers and asks that the corporate veil be pierced to hold Sams individually liable for Elite's wrongdoing. Count IX is a general claim against all Counterclaim and Third-Party Defendants for breach of fiduciary duty, and Count X alleges fraud and constructive fraud. As for Counts XI–XV, these are claims for breach of contract, fraud and constructive fraud, tortious interference, and negligence against Kwan's company, Glory Commodities, Inc., related to a cancelled holiday order for tumblers by HEB.

On March 17, 2026, DuBois, RFB, and RDD (hereinafter referred to as the "DuBois group") filed a Motion to Compel and for Protective Order (ECF No. 61), and, although labeled as a Motion to Amend/Correct the Motion to Compel, filed an Amended Motion to Compel on April 2, 2026. (ECF No. 66). Elite, Sams, FAV, and Fine (hereinafter referred to as the "ESG parties") filed responses in opposition to both motions. (ECF Nos. 63, 71). Following a review of the motions, the undersigned notes that the amended motion merely adds details concerning

additional attempts by the DuBois group to confer with the ESG parties regarding discovery but makes no request for a Protective Order. (ECF No. 71, ¶¶ 7, 8). As such, the original Motion to Compel (ECF No. 61) will be **DENIED as MOOT** and the Amended Motion to Compel (ECF No. 66) will be reviewed as the operative Motion in this case.

## II.    APPLICABLE LAW

A district court has wide discretion in handling pretrial discovery matters. *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1198 (8th Cir. 2015). A party generally may obtain discovery regarding any non-privileged matter that is relevant to any claim or defense if it is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Proportionality is weighed by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The rule requires a party objecting to discovery to show specifically how each discovery request is irrelevant or that the requests are not otherwise subject to discovery. *See id.* at 33(b)(4), 34(b).

This Court has the authority to compel discovery where "(iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted–or fails to permit inspection–as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Prior to filing a motion to compel, however, the moving party must demonstrate that the parties have conferred in good faith on the specific issue or issues in dispute and were unable to resolve their disagreement(s) without

6

Court intervention. Fed. R. Civ. P. 37(a)(1); W.D. AR. Civ. L.R. 7.2(g). This Court has consistently held that a good-faith effort to resolve the discovery dispute requires "at a minimum, an in-person or telephone conversation with opposing counsel." *Jason M. Hatfield, P.A. v. Ornelas*, 2023 WL 4489429, *3 (W.D. Ark. July 12, 2023). Failure to do so may result in summary dismissal for failure to comply with this rule. *Id*. Further, repeated failure to include the required statement may result in the "imposition of sanctions" against the moving party. *Id.*

## III.    DISCUSSION

The DuBois group seeks an order compelling the Elite parties to answer specific interrogatories and produce documents in response to requests for production. (ECF No. 66). They certify that they have conferred in good faith with opposing counsel via both correspondence and telephone on at least five separate occasions to no avail. The DuBois group contends further attempts would be futile based on opposing counsel's failure to respond to email and/or return their call. The Elite parties maintain, however, that the exhibits attached to the Amended Motion to Compel do not evidence good faith efforts were made to resolve their objections to the discovery requests at issue.

### A.    Good Faith Effort

The DuBois group attached to their Amended Motion to Compel a series of emails and/or letters exchanged between counsel. (ECF No. 66). On October 8, 2025, the Elite parties submitted separate responses to the Dubois group's First Set of Interrogatories and Requests for Production of Documents. (ECF No. 66-1, 66-2, 66-3, 66-4). On October 29, counsel for the DuBois group, Andrew Myers ("Myers"), penned a letter to opposing counsel regarding the disputed discovery and explaining why specific discovery requests were made. (ECF No. 66-6). Further, Myers sent an email to opposing counsel on November 21 primarily concerning a subpoena. (ECF No. 66-8;

7

ECF No. 66-10, pp. 1-2).  However, the email did contain a paragraph in which Myers reiterates his October 29th letter and states that he has not yet received the financials or the alleged communications between the parties concerning the "unwinding" of the parties' agreement.

Thereafter but prior to Thanksgiving, counsel apparently had a telephone conversation regarding discovery and the settlement conference scheduled for November 12, 2025.  In a December 3 email to the Elite parties' counsel, Myers lays out the financials needed by DuBois to value her interest.  (ECF No. 66-9, pp. 2-3; ECF No. 66-10, p. 1).  In follow-up on December 10, Myers asks whether the Elite parties will provide financials for the company through the present.  (ECF No. 66-9, p. 1).  If not, he indicates the next step would likely be to let the Court decide.  (*Id.*).  The Elite parties' counsel responded on December 12 indicating he would be in contact with his clients and would get back with Myers "soon."  (*Id.*).

On January 7, 2026, Myers sent a follow-up email concerning the financial information requested.  (ECF No. 66-10, p. 1).  He states that what had been received to date included "HEB's subpoena response and approximately 17 pages of P&Ls/general financial information with no underlying documents."  (*Id.*).

While the Court does prefer in-person and/or telephone communications to evidence good faith, based on the communications presented and the positions taken by the parties in their motions and responses, the Court is satisfied that the parties have at least attempted to resolve their discovery disputes without court intervention.  *See Hatfield, P.A.*, 2023 WL 4489429 at *3.  Accordingly, the undersigned will rule on the merits of the Amended Motion to Compel.  (ECF No. 66).  The Court does not, however, find that a hearing on the matter is necessary and will **DENY** the Request for Hearing (ECF No. 76) filed on May 4, 2026.

The Court notes that the DuBois group served each of the Elite parties with a separate set of discovery requests.  In turn, each of the Elite parties submitted their own separate responses. (ECF Nos. 66-1, 66-2, 66-3, 66-4).

### B.    Interrogatories

At the outset, we note that the Elite parties have consistently objected to all discovery requests because the DuBois group seeks to discover information and documents regarding transactions and communications that occurred after the alleged "unwinding" of the parties' business relationship on April 30, 2024.  (ECF No. 71, p. 9).  The record before this Court, however, does not make clear if and/or when a formal unwinding occurred.  In the Complaint, filed on January 8, 2025, Elite asks this court to declare that a partnership *exists* in which DuBois, through RFB, *is* a partner in Elite, and as a result, all business income and opportunities RFB has received *and will hereafter receive or obtain* from HEB belong to Elite.  In the alternative, it asks for a declaration that a de facto merger of RFB into Elite occurred, and as a result, all business income and opportunities RFB has received and *will hereafter receive or obtain* from HEB belong to Elite.  (ECF No. 3, ¶¶ 44, 45).  Moreover, the DuBois group seeks 25% of the profits made from any reorders utilizing RDD's designs.  The Court, therefore, finds that the DuBois group's request for discovery materials dated between 2023, and the present time is neither overly broad nor unduly burdensome and is proportional to the needs of the case.

The first dispute concerns **Interrogatory No. 10**, which requests:

> Identify every financial institution [you] held an account at, including banks, credit and/or loan companies including those [you] held a credit card with, and other sources where money was held.  In support of your answer, provide a routing and account number for each.  (ECF Nos. 66-1, 66-2, 66-3, 66-4).

9

Sams, FAV, and Fine each object because the interrogatory seeks sensitive personal financial information and is overly broad and unduly burdensome in that it seeks a list of "every financial institution." They contend that their personal financial information is not relevant to the litigation. Elite, however, states it has no objection to producing its credit card statements and banking information for the relevant time period of January 1, 2023, through April 30, 2024, but anything beyond that is neither relevant to causes of action, nor proportional to the needs of this case.

The parties are reminded that the DuBois group seeks 25% of profits from all revenue generated by Elite during the Agreement in Principle and for any reorders from customers utilizing RDD's designs (both past and present); allege Sams and Fine (d/b/a FAV) used the Elite credit card/revenue without providing receipts for expenditures and comingled Elite's credit card with other entities to garner greater reward points and linked Elite accounts with other business accounts and transferred funds for no apparent business reason; claim ESG was to pay back GG's loan; request an accounting to determine revenues, expenses, and net profits that should be shared/distributed per the Agreement in Principle; insist the Elite parties breached the contract to pay them 25% of the net profits, pay expenses incurred by the DuBois group, and repay their promissory notes; maintain the Elite parties have retained a benefit in the form of profits/retained earnings; state the Elite parties have broken a promise to pay expenses and split profits 25%; and allege GC, as a member/shareholder/partner of the endeavor tasked with supplying the product, breached the contract by failing to timely supply the product. As such, the Court finds that the interrogatory is reasonably calculated to lead to admissible evidence. And, while we do agree that the interrogatory is overly broad and unduly burdensome as written, the DuBois group has

10

indicated it is willing to limit the request in time from June 1, 2023, until the present.  (ECF No. 67, p. 3).

Accordingly, the financial documents of each of the Elite party members are discoverable and they are **ordered to respond to Interrogatory No. 10** with financial information dated **between June 1, 2023, and the present**.  For privacy, the parties will be permitted to redact all account numbers down to the last four digits and completely redact the routing numbers.

**Interrogatory No. 11** differs slightly between Elite and the other counter-defendants and third-party defendants.  Elite was asked to "[p]rovide a breakdown of all debits or charges covered by [Elite] since the inception of the Agreement in Principle, and provide an explanation of each, including how the debit or charge was for a business benefit."  (ECF No. 66-1).  Sams, FAV, and Fine were asked to provide a breakdown of all expenses they have incurred that were covered by Elite.  (ECF Nos. 66-2, p. 15; ECF No. 66-3, 66-4).

The Elite parties object to this interrogatory as overly broad, vague, and unduly burdensome, contending it seeks a breakdown of debits and charges without limiting the timeframe, type of expense, or relevance of any particular claims or defenses in the case; however, they also agreed to produce "responsive, non-privileged documents, if any exist."  (ECF No. 66-1, p. 15; ECF No. 66-2; ECF No. 66-3, p. 15; ECF No. 66-4, p. 15).  The DuBois group contends it has not received a response to this interrogatory.

Interrogatory 11 is reasonably calculated to lead to the discovery of admissible evidence, as it will at the very least show how much money was made, the expenses incurred, and whether distributions to other parties, including Sams and Fine, were made (which would go to the unjust enrichment, fraud, and comingling claims).  Given that the Dubois group has limited the expenditures to those covered since the inception of the Agreement in Principle, it is not overly

11

broad or unduly burdensome.    Therefore, the Elite parties are **ordered to respond to Interrogatory 11**.

Interrogatory 14 was only served on Elite.  It requests that Elite:

> [i]dentify any third party, including consultants and accounting firms, that assisted in "unwinding" or otherwise handling the post-agreement in principle arrangement between the parties and [Elite's] operations thereafter, including the name, phone number, email, and role of any individual with said third party who assisted in the same, and a summary of steps taken to address the "unwinding."

(ECF No. 66-1, p. 16).  Although Elite objects to the interrogatory as overly broad, unduly burdensome, and vague, it listed "attorney J. Michael Hope and counsel for certain parties herein involved in communications relating to the cessation of the parties' relationship."  (*Id*.).  Elite contends that said other "counsel" is already known to the DuBois group as Craig Cockrell from Mitchell Williams.  The interrogatory response does not, however, list Mr. Cockrell and his contact information.  As such, Elite is **ordered to provide a full response to Interrogatory No. 14**.

Interrogatory No. 15 was also served only on Elite.  It requests that Elite identify every transaction and/or transfer between Elite and GG from January 1, 2023, to the present and to provide a summary of the purpose of each.  (ECF No. 66-1, p. 17).  Elite is also asked to identify any factory invoices, sea freight, duties, transportation and warehouse costs paid by GG on behalf of Elite, including those associated with the Go! /Hydration and Go! Pickleball brands.  (*Id*.).  Again, Elite objects on the grounds that the interrogatory is overly broad, vague, and burdensome and calls for a narrative response.  (*Id*.).  Further, it contends that DuBois is in possession of the transactions and transfers between Elite and GG, as she has been a member of GG; that the request seeks proprietary information/trade secrets/other confidential sensitive information for the time period after the dissociation of RFB from GG; and the interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.  (ECF No. 66-1, pp. 17-18).  Despite these

objections, however, Elite claims it provided the requested information for the year 2023 and states it will provide information through April 2024, the date of the unwinding.  (ECF No. 71, p. 7).

The Court notes that a Protective Order was entered in this case on July 30, 2025.  (ECF No. 39).  Therefore, discovery of all proprietary information, trade secrets, and/or confidential information is governed by said Protective Order.  As for Elite's argument that DuBois already has access to the information requested because she is a member of GG, we note that Fine's Affidavit indicates that during the attempted merger process, "the financials of [GG], EGB, RDD, LLC, and [ESM] (the four divisions proposed new company) were consolidated into a single set of financials under Elite Global Brands.  These consolidated financials were never reversed or separated in QuickBooks or the Excel financials generated by C-Suite Now."  (ECF No. 74, ¶ 3).  Both DuBois and Fine agree that DuBois *had* access to this information until Fine stripped her access in April 2024, well before the present litigation was filed.  (ECF No. 66-12, ¶¶ 4, 6, 9, 12; ECF No. 74, ¶¶ 4, 8).  As such, it appears that DuBois no longer has access to the information requested in this interrogatory.  Accordingly, Elite is **ordered to provide a full response to Interrogatory No. 15**.

### C.    Requests for Production

At the outset, the Court notes the Elite parties claim to have produced more than 4,700 pages of documents and communications, with approximately 2,000 additional pages to be made available by the end of April.  (ECF No. 71, p. 2).  Thus, to the extent Elite has not produced the documents requested in the contested requests for production, the Court makes the following findings:

**Request for Production No. 1** asks the Elite parties to "produce all documents, emails, memos, notes, webpages, calendars, letters, statements, internal emails or computer notes, video or audio recordings, photographs, communications, correspondence, or other tangible items which

13

describe, contain information material to, were used to answer each of the interrogatories, or which document or record any of the information, decisions, or processes related to the information sought in each Interrogatory." (ECF No. 66-1, p. 18). The Court finds that the requested documentation is discoverable and **must be produced**.

In **Request for Production No. 2**, the DuBois group asks for all documents in the possession of any person listed in the Elite parties' responses to the interrogatories that will support, corroborate, or relate to their claims or either parties' defenses thereto. (ECF No. 66-1, p. 19). Again, this information is discoverable and **must be produced**.

The Court finds **Request for Production No. 3** to be **duplicative** of Request No. 1, requesting any other audio tape, video tape, email, text, or other electronic transmission identified, referenced, or relied upon in answering the interrogatories. (ECF No. 66-1, p. 19). Therefore, the Elite parties are not required to respond.

**Request for Production No. 4** is also **duplicative** of Request No. 2, asking the Elite parties to produce any and all documents, communications, and correspondence that support, corroborate, or relate to any claim or defense that either party may assert in this action. (ECF No. 66-1, p. 20). As such, they are not required to respond.

**Request for Production No. 7** requests all correspondence, emails, notes, electronic texts, social media posts, and other communications you have written, received, sent, or posted pertaining to the allegations in the case. (ECF No. 66-1, p. 21). This information is discoverable.

As for Elite's argument that some of these documents or communications are protected by the attorney-client privilege or attorney work-product doctrine, the Elite parties **are ordered to produce all non-privileged documents requested**.

In **Request for Production No. 8**, the DuBois group seeks all communication between the parties to the Agreement in Principle from January 1, 2023, to the present. (ECF No. 66-1, p. 22). The Elite parties aver that this request is overly broad and unduly burdensome because it seeks "all communications" between the parties, which might include personal communications or business matters unrelated to the present litigation. However, Elite asks this Court to find that a partnership exists or a *de facto* merger occurred. As such, all communication between the parties is both relevant and discoverable. Therefore, the Elite parties **must produce the documents**.

**Request for Production No. 9** is **duplicative** of Requests Number 1 and 3, asking for copies of all documents, communications, and correspondence identified or referred to in each of your responses to these interrogatories. (ECF No. 66-1, p.22). Therefore, the Elite parties are not required to respond.

**Request for Production No. 10** seeks production of financial statements including canceled checks, credit card statements, and statements from any financial institution where you have had an account from January 1, 2023, to present." (ECF No. 66-1, p. 22). Again, given the claims in the case, this information is also discoverable and **must be produced by all the Elite parties**.

**Request for Production No. 11** asks Elite to produce corporate documents, including operating agreements, membership interest/purchase agreements, meeting minutes, and agreements in principle or other documents associated with a partnership and/or merger from January 1, 2023, to present. (ECF No. 66-1, p. 23). Despite objections, Elite agreed to produce responsive, nonprivileged documents in accordance with the Federal Rules of Evidence. And Elite claims it has no corporate documents that have not already been produced. (ECF No. 66-1, p. 15). Accordingly, Elite is not required to produce additional documents.

**Request for Production No. 12** seeks documents evidencing the source of all income to Elite, including bank statements, checks, and receipts from January 1, 2023, to present. (ECF No. 66-1. P. 23). Elite insists the request for "all income" is overly broad and unduly burdensome. We disagree. The Court is being asked to determine whether a partnership or *de facto* merger existed and whether Elite and/or the DuBois group are entitled to compensation. Both sides have asked for an accounting and there are allegations of unjust enrichment, fraud, and comingling. As such, the documents requested are discoverable and **must be produced**.

**Request for Production No. 13** requests Elite's financial records, financial statements, profits/losses, asset lists, expense reports, other debits/charges to Elite accounts, purchase orders, invoices, and any drafts or revisions thereto, including monthly reports from January 1, 2023, to present. (ECF No. 66-1, p. 24). Elite maintains that the term "financial statements" is vague, indefinite, and susceptible to multiple interpretations. Further, it contends not all income, charges, or financial activity reflected in the requested documents pertain to the claims or defenses in the case. However, once again, the documents requested are discoverable because the Court is being asked to determine whether the parties entered into a partnership or de facto merger and whether there is evidence of unjust enrichment, fraud, and/or comingling. Accordingly, Elite is **directed to provide the requested documents**.

In **Request for Production No. 15**, the Dubois group seeks production of Elite's QuickBooks and similar financial systems from January 1, 2023, to present; itemized invoices paid by or sent to Elite from January 1, 2023, to present including from any warehouse for Go! Merchandise; factory invoices, sea freight, duties, transportation and warehouse costs paid by GG on behalf of Elite, including those associated with the Go! Hydration and Go! Pickleball brands; performa invoices submitted to GC or any other supplier/factory/warehouse pertaining the RFB's

16

HEB shipments, including those pertaining to Halloween/day of the dead 2025 shipment; and statements and other documents evidencing transactions and/or transfers between Elite and GG. (ECF No. 66-1, p. 25). Elite objects to this request as being overly broad and not limited in scope to the claims in the case. Further, it claims these documents are not within their possession, custody, or control because some documents are maintained by third parties such as GC. However, the documents requested are discoverable and **must be produced**.

Federal courts have held that a party is deemed to have control over material that it has the practical ability to obtain. *Torey v. Infectious Diseases Society of America*, 334 F.R.D. 79, 85 (E.D. Tex. Aug. 29, 2019); *Local 3621, EMS Officers Union v. City of New York*, 2023 WL 8804257, at *11 (S.D.N.Y. Dec. 20, 2023) (citations and internal punctuation omitted); *accord Seawolf Tankers Inc. v. Laurel Ship, LLC*, 345 F.R.D. 55, 59 (S.D.N.Y. Dec. 30, 2023) ("A party has control if it 'has the legal right to obtain the document, even though in fact it has no copy.'") (citation omitted). The fact that permission might be denied does not alter the fact that if permission is granted, defendants have the "practical ability" to obtain the documents. As such, **Elite should request the documents from GC.**

**Request for Production No. 17** asks for Elite's emails, correspondence, texts, other communications, and documents regarding "HEB shipments" from January 1, 2023, to present. Elite objects claiming the term "HEB shipments" is undefined and could encompass multiple unrelated transactions, products, or communications. However, the term "HEB shipments" is not vague. The parties initially entered into an agreement to provide products to HEB. Thus, the request clearly relates to those shipments. However, because HEB shipments dated after the alleged unwinding are also at issue, Elite **must produce documents concerning all HEB shipments** dated during the relevant period.

Again, Elite posits that documents concerning GC's shipments are not in its possession, custody, or control.  (ECF No. 66-1, p. 26).  However, Elite is reminded that the term control includes production of any documents to which the party has the practical ability to obtain. Therefore, Elite is **directed to at least request the shipping documents from GC**.

## IV.    CONCLUSION

As set out above, the DuBois group's Motion to Compel (ECF No. 61) is **DENIED as Moot**; their Amended Motion to Compel (ECF No. 66) is **GRANTED in PART and DENIED in PART**; and the Request for Hearing (ECF No. 76) is **DENIED**.  The Elite parties are **ORDERED** to provide responses to Interrogatories 10, 11, 14, and 15 and Requests for Production 1, 2, 7, 8, 10, 12, 13, 15, and 17, if they have not already done so, **within 14 days of this Order**.

IT IS SO ORDERED on this 17th day of June 2026.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE